UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
::
DUPREE HARRIS,                            :        09-CV-4380 (ARR)
:
               Petitioner,               :
:        <u>NOT FOR PRINT OR</u>
     -against-                           :        <u>ELECTRONIC</u>
:        <u>PUBLICATION</u>
:
UNITED STATES OF AMERICA,                 :
:        <u>OPINION AND ORDER</u>
               Respondent.               :
::
----------------------------------------------------------------- X

ROSS, United States District Judge:

      Petitioner, Dupree Harris, initially <u>pro se</u> and now represented by counsel, seeks to vacate

his conviction and sentence pursuant to 28 U.S.C. § 2255. On August 3, 2006, Harris and his co-

defendants, William Cobb and Lindsey McDonnell, were convicted after a jury trial of all

charges alleged against each. Specifically, Harris was convicted of: (1) conspiracy with his co-

defendants, between September 2000 and October 2002, to distribute in the this district and

elsewhere 50 grams or more of crack and 500 grams or more of cocaine, in violation of 21

U.S.C. §§ 846 and 841(b)(1)(A)(iii) (Count Two); (2) the use, carrying, and possessing in the

Northern District of New York of a firearm in furtherance of the conspiracy charged in Count

Two, in violation of 18 U.S.C.§ 924(c)(1)(A)(ii) (Count Three); and (3) distributing crack in the

Northern District of New York on February 7, 2002, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(c) (Count Four). The Second Circuit Court of Appeals affirmed all convictions by

summary order, <u>see</u> <u>Umited States v.Blackshear</u>, 313 Fed. Appx. 338 (2d Cir. 2007), and Harris's

petition for writ of certiorari was denied by the Supreme Count on October 5, 2009.

The majority of petitioner's claims allege ineffective assistance of counsel, both at the trial and appellate levels. He also contends that the government did not timely produce certain material and evidence, and that he was held under conditions of confinement so restrictive as to violate his due process rights. Finally, he contends that his sentence under 18 U.S.C. § 924(c) was unlawfully imposed and should be vacated.

The core evidence at trial is accurately summarized in the Government's Response in Opposition to Petition to Vacate Conviction pursuant to 28 U.S.C. § 2255 ("Response Memo."), pp. 2-7, and need not be restated here. Further evidence pertinent to the specific claims made in this petition will be addressed in context in the discussion below. For the reasons that follow, I find none of the petitioner's claims to be meritorious, and therefore deny the petition in its entirety.

## DISCUSSION

I.     Petitioner Received Effective Assistance of Counsel at Trial

Harris assails his trial counsel's effectiveness at trial on essentially three grounds. First, he complains of her ineffectiveness arising from her failure to move to dismiss counts of the indictment for lack of venue and as duplicitous. Additionally, he contends that her failure to make various evidentiary objections rendered her representation ineffective. Finally, he faults her failure to investigate and pursue asserted "exculpatory evidence" brought to counsel's attention prior to trial by one Ahmed Walker, and her failure to move for a new trial under Rule 33, Fed. R. Crim. P., based on a post-trial letter written by co-defendant Cobb.

In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate first, that counsel's performance fell below "an

objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 698. A court need not decide both prongs of the Strickland test if a party has made an insufficient showing on one of them. See id. at 697.

### A. Counsel's Choice Not to Pursue Certain Pre-Trial Motions Was Not Ineffective

#### 1. The Decision Not to Move to Dismiss Count Four on Venue Grounds Was A Reasonable Tactical Choice

Count Four of the indictment charged Harris with distribution of crack on February 7, 2002 in the Northern District of New York. Because this count was clear on its face that the charged conduct occurred in the Northern District of New York, the failure to challenge venue waived the defect. United States v. Levasseur, 816 F. 2d 37, 45 (2d Cir. 1987) (citing United States v. Price, 447 F.2d 23, 27 (2d Cir.), cert. denied, 404 U.S. 912 (1971).

Petitioner's efforts to elaborate a rationale why counsel's waiver of the defect was not a deliberate and reasonable strategic choice fall far short of their mark. Contrary to his assertion, it is highly likely that, had petitioner been acquitted in this district of the other counts against him, the Northern District of New York would not have abandoned prosecution for this separate crime but would, rather, have taken full advantage of the opportunity for a second bite at the apple. Indeed, the trial evidence on this count suggests no cogent reason why prosecution in that district would not have been vigorously pursued. Counsel's choice to waive venue thus cannot be characterized as unreasonable, nor can Harris show that it caused him prejudice.

2. The 924(c) Charge (Count Three) Was Not Duplicitous and In Any Event, the Wording of the Charge Certainly Caused Harris No Prejudice[1]

Relying solely on caselaw from the Sixth Circuit, – specifically, United States v. Combs, 369 F.3d 925 (6th Cir. 2004), Harris contends that the § 924(c) count was duplicitous and that he suffered prejudice by his trial counsel's failure to remedy the defect pretrial by a motion to dismiss the charge. It is true that in Combs, the Sixth Circuit concluded that § 924(c) criminalizes two separate and distinct offenses -- (1) possession of a firearm in furtherance of a crime, and (2) use and carrying of a firearm during and in relation to a crime. The Second Circuit, however, has never decided whether the statute is duplicitous, and at least one other circuit – the Seventh Circuit – has reached the conclusion that it is not. See United States v. Haynes, 582 F.3d 686, 704 (7th Cir. 2009) ("[T]he three ways in which [the crime defined in] § 924(c) can be committed may be alleged in the conjunctive in one count . . . and proof of any one of them will support [a] conviction.") See also United States v. Stewart, No. 08 CR 720, 2009 WL 219603, at *2 (N.D.Ill. July 17, 2009) ("Because § 924(c) sets forth disjunctive theories of liability for a *single offense*, an indictment is not duplicitous if it raises the theories conjunctively in a single count.")

Even the Sixth Circuit has taken care to distinguish a duplicitous indictment under § 924(c) that does not call into question "'the unanimity of a verdict of guilty . . . because proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would

---

[1] Since Harris's counsel did not pursue the contention that Count Four, charging distribution and possession with intent to distribute crack, was duplicitous, the pro se claim may have been abandoned by his subsequently retained counsel. In any event, the claim is squarely foreclosed by United States v. Viserto, 596 F.2d 531, 537 (2d Cir. 1979) ("21 U.S.C. § 841(a)(1) makes distribution and possession with intent to distribute a single offense. The indictment is in the standard form used to set out the means by which the single offense may be committed. That does not make the indictment duplicitous.")

otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense.'" United States v. Lloyd, 462 F.3d 510, 514 (6th Cir. 2006) (quoting United States v. Savoires, 430 F. 3d 376, 380 (6th Cir. 2005)). In the instant case, as the government observes and Harris does not dispute, the jury instructions not only clearly specified the elements of the three potential ways to commit the § 924(c) offense but also explicitly required that the jury be unanimous as to one of the three ways. There can thus be no doubt that the jury reached a unanimous verdict with respect to conduct that constitutes a codified federal offense under the statute. Moreover, Harris has not – and cannot – identify any respect in which he was prejudiced.

    B.    <u>Counsel's Choice to Refrain from Pursuing Certain Evidentiary Objections Did Not Render Her Ineffective</u>[2]

    1.    <u>Testimony of Linette Reed</u>

Petitioner contends that his trial counsel was ineffective in failing to object to testimony by Linette Reed that Naomi "Penny" Harley told her (1) that petitioner was "above them all" in the drug distribution conspiracy, and (2) that Harley contacted petitioner when she needed more drugs. (T 975). While it is apparently uncontested that Harley, the out-of-court declarant, was a coconspirator of petitioner at the time she made these statements to Reed, satisfying one

_____

[2] An evidentiary argument advanced by Harris <u>pro se</u> but not pursued by retained <u>habeas</u> counsel was trial counsel's assertedly unreasonable lapse in permitting the admission into evidence of Cobb's guilty plea allocution from the Northern District of New York without requesting a limiting instruction that Cobb's allocution was not to be considered as evidence against Harris. While such an instruction, if requested by trial counsel, would have been given to the jury, the fact that the allocution made no conceivable reference to Harris strongly suggests that counsel made a reasoned tactical judgment that such a limiting instruction, pointedly calling Harris to the attention of the jury in connection with Cobb's guilty plea, would create an opportunity for improper and unnecessary jury speculation, given that Cobb's guilty plea did not itself make the slightest reference to petitioner. In any event, the record discloses no basis for an argument that Harris suffered prejudice by the absence of a limiting instruction.

requirement of Rule 801(d)(2)(E), Fed. R. Evid., petitioner now contends that Harley's statements to Reed were not in furtherance of the conspiracy as required by the Rule, constituting, rather, mere "idle chatter." According to petitioner, Harley's statements could not have been in furtherance of petitioner's drug conspiracy because, citing an exchange in which Reed denied *personally* selling drugs (T. 1094), petitioner concludes that "Reed herself never participated in the crack-selling operation that was conducted out of Penny Harley['s] apartment." (Reply Memo. P. 30).

That Reed denied personally consummating hand to hand crack sales is not even inconsistent with, much less does it undermine, the overwhelming evidence that Reed was an integral part of the petitioner's crack operation, involving crack sales from, among other locations, Harley's apartment when Reed was living there. The out-of-court statements at issue were made by Harley to Reed during the time period that the crack distribution conspiracy involving petitioner, Cobb, "Pop," Harley, Reed and others operated out of Harley's apartment. Reed, fully cognizant of the activity in which she participated and the roles of each of the others in the crack distribution from the apartment (T 966-84), was assigned by Harley the task of answering the door for drug customers, and Reed performed that task "almost every time" a customer arrived at the apartment (T.970), which, according to Reed, occurred more than once an hour (T.980). A large number of the drug purchases then occurred in Reed's presence. In light of this evidence, it is clear that Harley's comments to Reed about the operation and its participants were intended to facilitate Reed's ongoing participation in the drug conspiracy, thus falling well

within the requirements of Rule 801(d)(2)(E), Fed. R. Evid. Counsel cannot be faulted for failure to register a meritless objection.[3]

        2.      Testimony of Jennifer McIntosh

Petitioner also contends that trial counsel was ineffective in failing to object to testimony by Jennifer McIntosh, Cobb's girlfriend, concerning out-of-court statements made to her by Cobb that (1) petitioner's real name is Dupree Harris, (2) money McIntosh had observed on Cobb's bed was "part of money he owed to Shug," (3) when petitioner was out of town, a lot of work fell on Cobb's shoulders, and (4) Cobb gave "Pop" crack obtained from petitioner. The basis of petitioner's argument that these statements were not made in furtherance of Cobb's conspiracy with petitioner, and were thus not within the scope of Rule 801(d)(2)(E), Fed. R. Evid., is McIntosh's testimony that she first sold crack for the conspiracy in April of 2002 (T. 1259-60). Because Cobb made the noted statements to McIntosh over the few months preceding McIntosh's first drug sale for the conspiracy, petitioner argues that the statements could not have been in furtherance of the conspiracy.

But statements made in part to induce another to join a conspiratorial venture and to pave the way for that future, active participation by imparting information about the aims, participants

---

[3] Petitioner also assails as an unreasonable lapse of representation his trial counsel's failure to register an objection to Reed's testimony that Cobb told her that Sue King, another coconspirator, had set him up, and that when he and Jennifer McIntosh, Cobb's girlfriend and coconspirator, were approached by police, Jennifer concealed the drugs that Cobb and McIntosh then possessed. (Reply Memo. at 30, citing T. 1057). As the government observes, this testimony was elicited on cross-examination by counsel for one of petitioner's co-defendants in an effort to impeach Reed. More importantly, as the testimony did not bear on petitioner in any way, it was a reasonable strategic judgment by counsel to forego a limiting instruction, which itself might have suggested that Cobb's admissions had some bearing on petitioner's culpability, an inference that could not be drawn from the testimony itself.

and operation of the conspiracy are no less "in furtherance of the conspiracy" within the meaning

of Rule 801 than are statements made to existing coconspirators to further conspiratorial goals.

Here, soon after Cobb made the protested statements, McIntosh in fact became a highly active

participant in the conspiracy – not only by selling its drugs but also by accompanying Cobb to

retrieve more drugs and secreting them on her body to avoid detection. Her prompt and ample

participation in the drug venture is itself powerful independent evidence that Cobb's earlier

statements informing her of various aspects of the scheme were to some extent intended to

prompt McIntosh's assistance by familiarizing her with its workings. Notably, too, Cobb's

complaint about the responsibility foisted on him during petitioner's absences is a

communication that, in the context of Cobb's relationship with McIntosh, is peculiarly

suggestive of Cobb's motive to secure his girlfriend's support and assistance.

### 3. Susan King's Testimony

Petitioner argues that trial counsel was ineffective in failing to object to Susan King's

testimony that during a meeting at a motel to which she and her boyfriend, Gary Cleveland, had

been summoned at one o'clock in the morning to engage them to sell drugs for petitioner's

conspiracy, an unidentified person who took part in their meeting in the hotel room with

petitioner and Cobb told King that Cobb "is going to act like he's in charge but Shug [petitioner]

is in charge." (T. 1835). A review of King's testimony about the circumstances of that meeting –

including its timing, location, and purpose and what transpired on that occasion (see T. 1829-37)

– amply establishes by a preponderance that this third person, although King was unable to recall

his name and did not encounter him thereafter, was a coconspirator of Harris and Cobb and was

present to assist in persuading King to distribute the conspiracy's product. As a coconspirator

8

making this statement in furtherance of the conspiracy, this out-of-court statement was properly

admitted under Rule 801(d)(2)(E) and trial counsel could not reasonably have been expected to

register a meritless objection to the admissibility of the testimony.

### 4. Cobb's Letters

Petitioner's final complaint that trial counsel was ineffective in failing to object to the

admission of evidence arises from certain statements that Cobb made in letters to McIntosh

following his arrest. One such statement contained a direct reference to petitioner – specifically,

Cobb wrote: "Shug did that bullshit." The government is correct, however, that even assuming

that petitioner's counsel should have objected to the admission of this statement, her "waiver

does not rise to the level of ineffective assistance under Strickland ... because the petitioner has

made absolutely no showing of prejudice." (Response Memo. at 21). The government's case

against Harris was overwhelming, and the government's use of Cobb's letters at trial was

narrowly circumscribed to reliance on them to support the veracity of government witnesses'

testimony against Cobb. Given the trial evidence, there is no basis to believe that had any or all

of the disputed statements been excluded, there is a "reasonable probability" that the outcome of

petitioner's trial would have been different.

### C. Counsel's Choice Not to Pursue Petitioner's Proffered "Exculpatory Evidence" Was Reasonable

### 1. Ahmed Walker

Petitioner contends that his counsel was ineffective in neglecting to investigate and offer

at trial the testimony of Ahmed Walker. According to petitioner, by letter dated May 11, 2004

annexed to the petition,[4] Walker advised counsel that he had information that "Penny" Harley intended to falsely implicate petitioner at his trial "because of her fear that[, were petitioner free,] he would . . . retaliate [against] her for her earlier cooperation against [petitioner at his state trial for] murder . . . that involved some dude named Cliff getting killed." Also appended to the petition is a September 15, 2009 affidavit of Walker elaborating that while serving a 622-month sentence in federal prison, he was serendipitously placed on the telephone with Harley, whom he believed, but was not certain, he had met some time before in the "projects;" and that during their conversation, Harley disclosed that she "was lying on Dupree Harris because of her fear that he would come home and do something to her for her [earlier] cooperation in the state murder trial against" the petitioner.

The decision whether to call "particular witnesses is peculiarly a question of trial strategy," United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1074), and counsel's choice whether to call even witnesses who "might offer exculpatory evidence ... is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, (2d Cir. 2000). Moreover, "even strategic choices made after less than complete investigation do not amount to ineffective assistance as long as the known facts made it reasonable to believe that further investigation was unnecessary." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). In the circumstances of this case, it is extremely likely that regardless of the outcome of any further investigation by counsel of Walker's proffered evidence, the choice to call him as a witness at petitioner's trial, far from

---

[4] Notably, the letter is dated two weeks before petitioner was indicted in this case on May 25, 2004, and well over three weeks before defendant's first appearance when his trial counsel was appointed, on June 7, 2004.

necessary to or even supportive of an effective defense, would likely have been so unreasonable and potentially prejudicial to petitioner as to itself constitute an instance of ineffective representation of counsel.

Walker's testimony as to Harley's alleged motive to falsify her testimony against petitioner – her fear of retaliation for her prior testimony against him at his murder trial – would inevitably have disclosed to the jury that petitioner had previously been prosecuted for murder and that a witness against him in that proceeding was in fear of petitioner's violent retaliation. All participants in the instant trial – defense counsel, the prosecutors, and the court – were acutely aware of the potentially overwhelming prejudice to petitioner of disclosing these precise facts to the jury, and took great pains to avoid the presentation to the jury of any evidence that might open the door to this very disclosure. Moreover, as defense counsel well knew, there was no need to adduce more evidence for the sole purpose of impugning Harley's credibility. As counsel effectively elicited from Harley during cross-examination, Harley (1) had testified falsely before a federal grand jury, (2) acknowledged that her crack use rendered her unreliable, (3) had lied to a judge in denying her involvement in drug distribution, and (4) admitted that she would lie to a judge to avoid incarceration, characterizing such a lie as "okay." As the government observes, there was ample information to permit the jury to make a discriminating appraisal of Harley's credibility. There was thus no reason for counsel to elicit from Walker testimony that would have been overwhelmingly prejudicial to her client, and counsel was eminently reasonable in appreciating the futility of further investigation of Walker's proffered evidence.

2.    Cobb's Post-Trial Claims

Petitioner also argues that counsel was ineffective in failing to bring a motion under Rule 33, Fed. R. Crim. P., based on a letter by Cobb, written post-trial but pre-sentence, stating that petitioner had no involvement in the drug operation and that a telephone that the government had alleged at trial belonged to petitioner actually belonged to Cobb. These allegations are repeated in Cobb's declaration submitted in support of the petition, wherein Cobb also swears that a man named "Enrique," not petitioner, was his source for drugs.

Apart from the extremely dubious proposition, as examined by the government (see Response Memo., p. 27), that petitioner could make the requisite showing under Rule 33 that Cobb's evidence was "new" and could not have been discovered with due diligence prior to trial, the overwhelming record of trial evidence against petitioner amply establishes petitioner's inability to demonstrate, as also required by Rule 33 to secure a new trial, "that admission of the evidence would probably lead to an acquittal." United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980). No less than eight cooperating witnesses provided detailed, consistent testimony regarding petitioner's participation in the conspiracy. The testimony of each was corroborated by the testimony of others. And the cell phone that Cobb now claims was his and not petitioner's, provided only a fraction of the evidence corroborating petitioner's guilt. In short, the extremely strong evidence against petitioner eliminates any probability that Cobb's post-conviction conclusory statements exculpating petitioner might have resulted in petitioner's acquittal. Counsel was thus not ineffective in electing to forego a patently meritless Rule 33 motion.

II.    Petitioner Received Effective Assistance of Appellate Counsel

Petitioner also contends that counsel rendered ineffective assistance on direct appeal by her failure to advance as grounds for reversal of the conviction: (1) the court's refusal to conduct certain inquiries of jurors and (2) the legal insufficiency of the evidence to establish that petitioner used or possessed a firearm in furtherance of the conspiracy in violation of 18 U.S.C. § 924 (c).

A criminal defendant has a right to the effective assistance of counsel on a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). When a defendant challenges the adequacy of representation by such appellate counsel, a court must review his claim under the standards for review of the performance of trial counsel. Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir.1990). That is, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694.

A.    Juror Inquiries

The first jury incident involved an alternate juror who stated in a note that she was distracted by both the trial and her work obligations, and thus could not be fair (T. 877-84). After questioning the juror in counsels' presence regarding her professed inability to be fair and ensuring that the juror had not discussed her concerns with any other member of the jury, I concluded that the inquiry was sufficient and that her dismissal was warranted. Petitioner's current contention that further inquiry was required fails to identify even in the most conclusory

13

terms what additional questions he believes should have been posed to the juror. Having made no showing that the juror's dismissal created a viable ground for appeal, petitioner has suggested no basis for this argument of ineffective assistance of appellate counsel.

The second jury incident involved an alternate juror whose note related that she had overheard other jurors discussing the case prior to the close of evidence. As a result, I questioned each of the other jurors individually. (T. 2055-2124). All of the other jurors assured me that they had heard no substantive discussion or deliberation by any other juror, and each asserted the belief that he or she could decide the case fairly. Petitioner now argues that counsel was ineffective in deciding not to raise on appeal my failure to ask additional questions of the alternate juror in order to develop more precisely her claim of the substance of the discussions she assertedly overheard involving others. Because each of the other jurors had denied overhearing any substantive discussions about the case and assured me that he or she could decide the case fairly, however, I determined that it would not be productive to probe further of the alternate juror. (T. 2120-24). Given the inquiry made and the extent of my discretion in this matter, counsel acted reasonably in choosing not to pursue the issue on appeal.

B. The 924(c) Count

The assertion in the pro se petition that counsel was ineffective in failing to challenge on appeal the legal sufficiency of the evidence on this count lacks any elaboration regarding the respect in which the evidence assertedly fell short. In view of the trial record, moreover, including evidence that when Harley's boyfriend, Barrett, tried to prevent Harley's participation in the crack conspiracy, petitioner pointed a gun at him, successfully intimidating Barrett into

withdrawing any objection, there can be no possible basis for raising on appeal the argument that the evidence on this count was insufficient.

III.   Petitioner's Due Process Rights Were Not Violated

Petitioner claims, also without further elaboration, that restrictive conditions of confinement hampered his defense in unidentified ways, and that the timing of production of certain telephone records and § 3500 material interfered with trial counsel's effective use of this material at trial. As a threshold matter, the government is correct that these arguments are procedurally barred as they were not raised on direct appeal, and the petitioner has made no showing of cause and prejudice or actual innocence necessary to circumvent the procedural bar. (See Response Memo. pp. 33-34, and authorities cited therein). As the government also argues, each of the claims is meritless.

Both the § 3500 material and the telephone records were in fact timely produced. Moreover, even trial counsel acknowledged that she had ample opportunity to examine the telephone records, which were produced to defense counsel when the government secured them more than a week before trial. Specifically, with respect to the phone records, counsel conceded that the timing of production was "not a problem." (T. 1649).

Similarly, there is no basis in the record, nor does petitioner advance one in his petition, to believe that the Special Administrative Measures to which he was subjected as a result of his prior witness tampering and other dangerous conduct in any way diminished the procedural fairness of the proceeding against him. Accordingly, petitioner has not sustained any claim that his due process rights were violated.

IV.    Petitioner's Challenge to His Consecutive Sentence under § 924(c) Is Procedurally Barred

Petitioner argues that his sentence was "illegal" because the court imposed a consecutive term of imprisonment based on his conviction under 18 U.S.C. § 924(c). Petitioner bases this argument on the decisions of the Second Circuit in United States v. Whitley, 529 F.3d 150, (2d Cir. 2008) and United States v. Williams, 558 F.3d 166 (2d Cir. 2009), both decided after petitioner's conviction became final. The government argues that petitioner's claim is procedurally barred as he failed to raise the claim on direct appeal.

Where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. See United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). "One way for a § 2255 petitioner to satisfy both the cause and prejudice requirements is to prove that he received ineffective assistance of counsel." U.S. v. Gallo-Lopez, 931 F. Supp. 146, 148 (N.D.N.Y. 1996); Murray v. Carrier, 477 U.S. 478, 479 (1986). Additionally, the Supreme Court has recognized that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)).

In Reed v. Ross, the Court articulated three examples of when a claim is not "reasonably available" so as to be considered novel. First, there is the obvious case where a decision of the Supreme Court explicitly overrules prior precedent. 468 U.S. at 17. Second, where a decision overturns a "longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority has expressly approved," a claim

16

based on that decision would not have been reasonably available before then. Id. Finally, a claim

may not have been reasonably available at earlier stages of the litigation if based on a new

decision disapproving of a practice which the Supreme Court had previously sanctioned. Id.

However, the Court in Bousley stated that procedural default cannot be excused simply

on the ground that petitioner's legal argument was "unacceptable to that particular court at that

particular time." Id. (quoting Engle v. Isaac, 456 U.S. 107, 130 n. 35 (1982)); see also De Jesus

v. U.S., 161 F.3d 99, 103 (2d Cir. 1998) ("In rejecting [petitioner's] arguments for cause, the

Supreme Court found that the default could not be excused on the grounds that [petitioner's]

legal argument was 'not reasonably available' to his counsel or that raising it would have been

futile."). Thus, "where the basis of a . . . claim is available, and other defense counsel have

perceived and litigated the claim, the demands of comity and finality counsel against labeling

alleged unawareness of the objection as cause for a procedural default." Engle v. Isaac, 456 U.S.

107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

In Bousley, the Supreme Court held that the petitioner procedurally defaulted his habeas

claim by not arguing that the definition of "use" in the federal statute prohibiting the "use" of a

firearm "during and in relation to a drug trafficking crime" required more than mere

"possession." Bousley, 523 U.S. at 616, 118 S.Ct. 1604. After the defendant's conviction was

affirmed, the Supreme Court clarified the statutory meaning of "use" in Bailey v. United States,

516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), defining it as "active employment." The

petitioner in Bousley argued that such an argument would have been "futile" prior to Bailey;

however, the Supreme Court rejected this argument. Bousley, 523 U.S. at 622-23, 118 S.Ct.

1604. The Court stated:

> Petitioner also contends that his default should be excused because, "before Bailey, any attempt to attack [his] guilty plea would have been futile." . . . This argument, too, is unavailing. As we clearly stated in Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 . . . (1982), "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Id. at 130, n. 35, 102 S.Ct. 1558 . . . . Therefore, petitioner is unable to establish cause for his default.

Id. at 623, 118 S.Ct. 1604. "In holding that the Bailey decision did not excuse procedural default, the Court also noted that, prior to Bailey, the definition of 'use' had been a frequently litigated issue in the lower courts and that the lower courts had not been uniform in their interpretation of that term." Cvijetinovic v. Eberlin, 617 F.Supp.2d 620, 639 (N.D. Ohio 2008) (citing Bousley, 523 U.S. at 622, 118 S.Ct. 1604). As one district court has noted, after Bousley, some courts have focused on the treatment of "futility" in Bousley and have concluded that Bousley greatly limits the circumstances which can justify a finding of cause under Reed. Cvijetinovic, 617 F.Supp.2d at 640 (citing McCoy v. U.S., 266 F.3d 1245, 1258-59 (11th Cir. 2001). This may particularly be the case where a petitioner argues a matter of statutory interpretation, at issue in Bousley, as opposed to arguing that an applicable legal doctrine, such as the burden of proof, is unconstitutional, the argument at issue in Reed. See, e.g., Richardson v. McCann, 653 F.Supp.2d 831, 844 (N.D. Ill., 2008) (finding Reed viable on constitutional Batson claim); Cvijetinovic, 617 F.Supp.2d at 640 (finding Reed viable on constitutional claim under Blakely v. Washington, 542 U.S. 296 (2004)).

While Reed does retain viability after Bousley, see, e.g., Cvijetinovic, 617 F.Supp.2d at 642, I find that the claim at issue in Whitley and Williams was "reasonably available" to petitioner. Reasonable availability does not depend on whether "subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available'

18

at all." United States v. Concepcion, 2009 WL 4884095, at * 5 (S.D.N.Y. 2009) (citing Smith v.

Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)). Bousley's finding that a

challenge to a prevailing legal standard was not "novel" when "Federal Reporters were replete

with cases involving [such] challenges" is relevant here, as a number of circuits from 2000 to

2006 addressed the "except" clause in 924(c). See United States v. Studifin, 240 F.3d 415, 423

(4th Cir. 2001); United States v. Jolivette, 257 F.3d 581, 587 (6th Cir. 2001); United States v.

Alaniz, 235 F.3d 386 (8th Cir. 2000), United States v. Collins, 205 Fed.Appx. 196, 198 (5th Cir.

2006); United States v. Baldwin, 41 Fed.Appx. 713, 715 (6th Cir. 2002). While these circuits all

declined to read the "except" clause literally, I do not find that the circuit split created by Whitley

and Williams satisfies the second prong of Reed.

Petitioner has thus failed to demonstrate that an objection to the reading of the statute was

"not reasonably available" at the time of his trial and appeal. Reed, 468 U.S. at 16. Therefore, he

has not proffered cause that excuses his procedural default, and his claim is dismissed

as procedurally barred.[5]

---

[5] Petitioner argues in the alternative that petitioner satisfies both the cause and prejudice
requirements because appellate counsel was ineffective for failure to raise the sentencing issue on
direct appeal. However, because a claim was "reasonably available" does not automatically mean
that appellate counsel is ineffective for failing to raise it. An appellate counsel who files a brief
on the merits of a criminal appeal need not raise every nonfrivolous claim, but rather may select
from among them in order to maximize the likelihood of success. Smith v. Robbins, 528 U.S.
259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (citing Jones v. Barnes, 463 U.S. 745, 103 S.Ct.
3308, 77 L.Ed.2d 987 (1983)). A petitioner may establish constitutionally inadequate
performance only if he shows that counsel omitted significant and obvious issues while pursuing
issues that were clearly and significantly weaker. See Clark v. Stinson, 214 F.3d 315, 322 (2d
Cir. 2000). Petitioner has failed to make such a showing, and thus, cannot show cause that
excuses his procedural default.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. A certificate of appealability is granted with respect to the sole issue of petitioner's claim under United States v. Whitley and United States v. Williams. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted with respect to petitioner's remaining claims. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated:      July 6, 2010
              Brooklyn, New York

**Service List:**

<u>Counsel for Petitioner</u>:
Robert J. Boyle
299 Broadway
Suite 806
New York, NY 10007


<u>Respondent</u>:
Lee Joshua Freedman
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201